upon a careful perusal of all the proofs in the case, I am satisfied that no such dedication, in point of fact, can be maintained.

The subject of the application of the compound of hard rubber to dental purposes engaged the attention of the proprietors as early as 1854–'55, and afterwards, in 1857–'58, the application to those purposes had become so far perfected that agencies were established, for the vulcanization of dental plates, in the city of New York, and elsewhere, and public notice was given of the same to the profession. Infringements were immediately commenced, and, among the first, by the firm of L. E. Christopher & Co. A suit was brought against that firm, for an infringement, by the American Hard Rubber Company, which then had acquired this interest in the patent; and circulars were issued to the dentists, notifying them of the infringement. The defendants sold out to E. A. L. Roberts, and left the city of New York, where they had resided. A suit was then commenced against Roberts, and, in October, 1859, an injunction was obtained against him. Other suits were also brought against infringers, who were enjoined. This company, besides issuing numerous circulars, proposing to vulcanize for dentists cases of teeth, issued a quarterly publication, called "The Vulcanite," which was commenced in May, 1860, and ended in May, 1862. The numbers of each quarter varied from as high as six thousand to as low as two thousand. These numbers were sent free to all the dentists in the United States whose addresses could be procured, and to all the dental depots, surgical instrument manufacturers, and dental colleges. I have the number for May, 1862, before me. Among other things, it contains a list of the names of the agents of the company, located in different parts of the country, with notice that the agents will furnish the compound to licensees only; and also a list, covering some five pages, closely printed, of licensees, residing in most of the states of the Union. The company also put into the market the compound, at various dental depots in many parts of the country, especially in the principal cities, which was made in sheets and put up in paper boxes, each box containing one pound, on the cover of which was a label, and which, among other things, stated that "this gum is furnished to our agents, and others, on the express condition that it shall be sold only to our licensees." The company further, at the same time, employed traveling agents, who visited the dentists at their homes, for the purposes of selling rights under the patent, and who succeeded in selling some three thousand. It is proper, also, to remark, that nearly all of the compound used by dentists in the city of New York, and elsewhere, was purchased by them from the depots of the company, in boxes having this label upon them. The defendant, who was a witness in his own behalf, admits that he purchased his compound in boxes, at S. S. White's depot, and that it was put up by the American Hard Rubber Company, and contained the label above mentioned. This was one of the company's depots. He admits, also, that there was a restriction on the sale of the compound, but says that he could always procure it, though not a licensee. He further admits, that, in 1864, he was called on to take out a license; that he replied that there was great dissatisfaction, among the dentists, at the way the company had managed, and that the licensees were not protected; and that he offered to take out a license if the company would protect him, and prevent infringers from using the compound at the next door. He admits, also, that he saw the circulars issued by the company, warning against infringements; that he saw several numbers of the publication called "The Vulcanite;" that they were left at his office; and that he saw in them articles on the subject of vulcanizing dental plates. He also recollects the suit against Roberts, and one against Toland, a dentist, in 1861.

I could extend this opinion much further, in referring to proofs all tending to show great and extraordinary exertions, on the part of the proprietors of this branch of the patent, to get the article into common use, and to prevent piracies, by means of litigation, and otherwise; but I regard the examination that has already taken place as quite satisfactory to show that no dedication or abandonment of their right has been established, and especially, none as respects the present defendant. His own testimony is abundantly sufficient to repel the conclusion as to himself. There must be a decree for the plaintiffs, and a reference, with a permanent injunction.

[For other cases involving this patent, see note to Goodyear v. Mullee, Case No. 5,577.]

═══

GOODYEAR (WARNER v.). See Case No. 17,183.

GOODYEAR v. WINGERTER. See Case No. 5,573.

═══

## Case No. 5,588.

**GOODYEAR & N. E. CAR–SPRING CO. et al. v. ELASTIC CAR–SPRING CO.**

[Nowhere reported; opinion not now accessible.]

═══

GOODYEAR DENTAL VULCANITE CO. v. BENJAMIN. See Case No. 5,597.

GOODYEAR DENTAL VULCANITE CO. (CELLULOID MANUF'G CO. v.). See Case No. 2,543.